IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

EUGENE KELTNER,

           Petitioner,

     v.                 CASE NO.  12-3200-SAC

STATE OF KANSAS,

           Respondent.

**MEMORANDUM AND ORDER**

The court previously screened this pro se petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 and entered a Memorandum and Order finding that it appeared to time barred. The court set forth tentative facts and the pertinent statutory provisions[1] and explained its application of those provisions to the facts. Mr. Keltner was given time to file a response to dispute the court's tentative findings or show his entitlement to either additional statutory tolling or equitable tolling. The standards for equitable were also set forth in the court's prior order. Petitioner responded by filing a document entitled "Motion for Permission to Docket out of Time" docketed as his

---

[1]  The statute of limitations for filing a federal habeas corpus petition is set forth in 28 U.S.C. § 2244(d)(1): "A 1-year period of limitation shall apply to an application for writ of habeas corpus by a person in custody pursuant to the judgment of a State court." The "limitation period shall run from" the "latest of" four dates, including "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review."  28 U.S.C. § 2244(d)(1)(A).  The statute also provides for tolling of the statute of limitations during the pendency of any "properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim . . . ."  28 U.S.C. § 2244(d)(2).

"Response" (Doc. 4) and a "Memorandum in Support of 2254 motion" docketed as his "Supplement" (Doc. 5).  Having considered all materials in the file together with the relevant legal authorities, the court concludes that this petition was not timely filed and must be denied.


**<u>PROCEDURAL HISTORY AND BACKGROUND FACTS</u>**

The court previously set forth the procedural history of Mr. Keltner's case, which he does not dispute.  Mr. Keltner pled guilty on June 9, 2005,[2] and was convicted in Wyandotte County District Court of involuntary manslaughter and aggravated robbery.  Under K.S.A. 21-4714 "a defendant's criminal history score (was) not calculated until after the defendant has been convicted."  *State v. Garcia*, 295 Kan. 53, 65, 283 P.3d 165 (Kan. 2012)(J. Rosen dissenting opinion).  Prior to sentencing, Keltner filed a Motion to Withdraw Plea claiming the "sentencing range exceeded the range contemplated by the parties during plea negotiations, and but for these representations, Keltner would

---

[2]     Supplement (Doc. 5) at 3.  As pages in his Supplement or "Memo in Support" petitioner has included a "Motion to Withdraw Plea" that is captioned in the Wyandotte County District Court and petitioner's criminal case, No. 04CR1086.  The attached motion is signed by counsel Krystal L. Vokins, but no date is affixed to the signature or the end of the motion and the motion is not file-stamped.  "Filed by Fax" is printed in the caption and at the bottom of each page.  Petitioner alleges in his Memo filed on January 30, 2014, that this attached motion is "in the District Court now."  This court has never been apprised as to the status of this motion.  Some of its content is referred to herein as allegations or arguments made by petitioner in his "Supplement."

not have entered the plea."[3]  *State v. Keltner*, 154 P.3d 47, 2007
WL 881953 (Kan.App. March 23, 2007)(hereinafter *"State v.
Keltner"*).  The trial court denied the motion and on August 4,
2005, sentenced Keltner to 336 months in prison.  Mr. Keltner
appealed the denial to the Kansas Court of Appeals (KCA).  He
argued that "he unknowingly entered his plea due to his trial
counsel's incompetence; thus, 'good cause' exists to withdraw
his plea."  *Id.* at *2.  The KCA reiterated that a trial court
determining whether to allow withdrawal of a plea should utilize
the "Edgar factors"[4] and evaluate whether:

> "(1) the defendant was represented by competent
> counsel, (2) the defendant was misled, coerced,
> mistreated, or unfairly taken advantage of, and (3)
> the plea was fairly and understandingly made.
> [Citation omitted.]"

---

[3]    The Kansas Court of Appeals succinctly described the facts underlying
Mr. Keltner's claim:

> At the time of the plea agreement, both parties believed
> Keltner's prior conviction for furnishing alcohol to a minor was
> a nonperson misdemeanor and, therefore, believed Keltner's
> criminal history score was a C.  With a criminal history of C,
> Keltner would have been subjected to a maximum of 107 months in
> prison for aggravated robbery and 60 months in prison for
> involuntary manslaughter, or a total of 167 months' imprisonment.
> See K.S.A.2004 Supp. 21-4704(a).

> On the day of sentencing, however, the State advised defense
> counsel that Keltner's conviction for furnishing alcohol to a
> minor might be a person misdemeanor.  If so, Keltner would have
> three person misdemeanors, which constituted a person felony.
> The additional person felony raised Keltner's criminal history
> score to a "B" and increased Keltner's maximum sentence to 228
> months in prison for aggravated robbery and 128 months in prison
> for involuntary manslaughter, or a total of 356 months'
> imprisonment.  See K.S.A.2004 Supp. 21-4704(a).

> *Id.* at *1.

[4]    *State v. Edgar,* 281 Kan. 30, 127 P.3d 986 (Kan. 2006).

*Id.* at *2 (citing *State v. Bey*, 270 Kan. 544, 545, 17 P.3d 322 (2001)). They also set forth the correct two-prong test for review of a claim of ineffective assistance of counsel:

> A two-prong test applies to set aside a guilty plea because of ineffective assistance of counsel. The defendant must prove: (1) counsel's performance fell below the standard of reasonableness, and (2) a reasonable probability exists that, but for counsel's errors, the defendant would not have pled guilty and would have insisted on going to trial.

*Id.* (citing *State v. Muriithi*, 273 Kan. 952, 956-57, 46 P.3d 1145 (2002)); see *Strickland v. Washington*, 466 U.S. 668 (1984). With respect to petitioner's ineffective counsel claim, the KCA noted the Kansas Supreme Court (KSC) had held that:

> defense counsel has an obligation to advise the defendant regarding the range of permissible penalties; however, defense counsel's inaccurate prediction regarding the penalty does not constitute ineffective assistance of counsel.

*State v. Keltner* at *3 (citing *State v. Solomon*, 257 Kan. 212, 223, 891 P.2d 407 (1995)). With respect to the trial court's denial of Keltner's motion to withdraw plea, they found "the rationale of *State v. Ford*, 23 Kan.App.2d, 930 P.2d 1089 (1996), *rev. denied* 261 Kan. 1087 (1997) controlling" and reasoned as follows:

> In *Ford*, at the time of the plea, both the prosecutor and defense counsel believed Ford had only one person felony, but Ford's presentence investigation report subsequently revealed he had two prior person felonies. 23 Kan.App.2d at 250. The defendant argued his plea was not "intelligently" made because he

relied upon the State and defense counsel's representations regarding his criminal history. This court affirmed, noting there is no recourse for a plea "unintelligently" made.[5] 23 Kan.App.2d at 252. The court further noted that under K.S.A. 21-4707(c)(4), prior convictions discovered after a plea has been accepted are properly considered in a defendant's criminal history at sentencing. . . .

* * *

Here, as in *. . . Ford*, a mutual mistake occurred as to the defendant's criminal history score. Nevertheless, the petition to enter a guilty plea informed Keltner of the maximum penalties for aggravated robbery and involuntary manslaughter, and the trial court repeated those penalties at the plea hearing. In addition, at the plea hearing, Keltner acknowledged his guilt and recited facts to support a guilty plea on both charges. Keltner also acknowledged that no one promised him he would receive a lighter sentence or probation as an inducement to plead guilty.

Under these circumstances, we hold the district court did not abuse its discretion in denying Keltner's motion to withdraw his plea.

*State v. Keltner* at *3. Mr. Keltner's petition for review was denied by the KSC on September 27, 2007.

On December 20, 2007, Mr. Keltner filed his "first" motion pursuant to K.S.A. 60-1507. See *Keltner v. State*, 231 P.2d 588, *2, 2010 WL 2348690 (Kan.App. June 4, 2010), *rev. denied* (Kan. Sept. 21, 2011)(hereinafter "*Keltner v. State*"). He alleged that his trial counsel was incompetent for the same reasons asserted on direct appeal. *Id.* However, on June 2, 2008, he

---

[5]    In *State v. Schow*, (discussed later herein in detail) the KSC "pause(d) to address this sweeping assertion" and correctly declared that there "is indeed recourse for the unintelligently made plea." *State v. Schow*, 287 Kan. 529, 543, 197 P.3d 825 (Kan. 2008).

voluntarily dismissed this motion before it was decided by the trial court. *Id.*

On August 25, 2008, Mr. Keltner filed his second 60-1507 motion. He again claimed ineffective assistance of plea counsel on the same grounds. The State was directed to respond but argued res judicata and that the motion was successive. The trial court summarily denied the motion, finding that "Movant's major argument has already been adjudicated" and denied by the KCA, and that the "records show defendant was represented by competent counsel, he was not misled, coerced, mistreated, or unfairly taken advantage of and his plea was fairly and understandingly made." *Id.* On December 12, 2008, the KSC issued its decision in *Schow* which abrogated *Ford*. Keltner filed a timely appeal. The KCA acknowledged the holding in *Schow* and that it had been "decided after Keltner's direct appeal had concluded." *Keltner v. State* at *3. *Schow* made it clear that a mutual mistake regarding a defendant's criminal history score is not insufficient as a matter of law to permit withdrawal of a plea, and instead may be considered a possible good cause for withdrawal under an Edgar-factors analysis.[6]

---

[6]    In *Schow*, the State and the defendant were mutually mistaken as to his criminal history score before he pled guilty. When the correct score was discovered and subjected defendant to a higher sentence, he filed a motion to withdraw his guilty plea. His motion was denied by the district court and the KCA affirmed the denial. The KSC agreed that a defendant could not meet his statutory good cause burden by simply declaring that the parties were mutually mistaken about the criminal history score. However, they reversed,

*Schow*, 287 Kan. at 529, Syl. ¶3.  Petitioner argued that *Schow* required reversal in his case and consideration of the circumstances underlying the "mutual mistake."[7]  The KCA ruled that *Schow* was not applicable "in this collateral proceeding."

acknowledging that the circumstances giving rise to the mistake could implicate the factors listed in *Edgar*, and should be available for consideration by the court.

*State v. Milo*, 310 P.3d 1078, *4 (Kan.App. 2013 Table)(citing *Schow*, 287 Kan. at 546).  In *State v. Freeman*, 292 Kan. 24, 29-30 (Kan. 2011), the KSC explained and applied their holding in *Schow* as follows:

> "[A] defendant seeking to withdraw his or her plea prior to sentencing has the burden to show the existence of good cause for permitting the plea withdrawal.  In determining the existence of good cause, the district court should consider whether: (1) the defendant was represented by competent counsel, (2) the defendant was misled, coerced, mistreated, or unfairly taken advantage of, and (3) the plea was fairly and understandingly made.  Where a defendant has pled guilty pursuant to a plea agreement which was based upon a mutual mistake as to defendant's criminal history score, the district court may consider the circumstances giving rise to the mutual mistake to the extent they may implicate the factors applicable to the existence of good cause to withdraw a plea." *Schow*, 287 Kan. at 546, 197 P.3d 825.

> Here, the district judge summarily denied Freeman's plea withdrawal motion.  There was no Edgar-style analysis before ruling. See *Schow*, 287 Kan. at 546, 197 P.3d 825.  Accordingly, as in *Schow*, we must conclude the judge's decision was not based on a correct understanding of the law.  More particularly, also as in *Schow*, we must conclude he abused his discretion because he failed to "consider the circumstances giving rise to the mutual mistake" and their effect on the "factors applicable to the existence of good cause to withdraw a plea."  287 Kan. at 546, 197 P.3d 825.

> Accordingly, we reverse the denial of Freeman's motion to withdraw plea and remand for the district court to apply the appropriate legal standards to determine whether Freeman established good cause and then to exercise its discretion in ruling on his motion.

*Id.*; see also *State v. Garcia*, 295 Kan. 53, 56 (283 P.3d 165 (2012).

[7]    The term "mutual mistake" implies that petitioner's plea attorney did not understand that petitioner's prior conviction for furnishing alcohol to a minor counted as his third person misdemeanor, which gave him a person felony and raised his criminal history score from a C to a B.  Petitioner alleges in his "Attachment" (Doc. 1) that counsel was aware of his criminal history.

*Keltner v. State* at *3.   They emphasized that the issue of ineffective assistance of Keltner's trial counsel had "indeed" been raised for the first time and decided on Keltner's direct appeal and thus additionally held that "res judicata preclude(d) further consideration in a collateral proceeding."   Finally, they held that Keltner's second 60-1507 motion raised the same ineffective counsel claims as his first; and because he had voluntarily dismissed the first, this second was properly dismissed as "successive."   *Id*. at *3-*4 (citing *State v. Foulk*, 195 Kan. 349, 404 P.2d 961 (Kan. 1965)(Under K.S.A. 60-1507(c), "a defendant who withdrew his first motion for post-conviction relief and asked that the motion be dismissed could not be heard on a second motion.").   Keltner filed a petition for review, which was denied by the KSC on September 21, 2011.   The instant federal petition was executed on September 14, 2012.[8]

---

[8]        As grounds for the instant petition, Mr. Keltner claims that his plea counsel Patricia Aylward Kalb was ineffective.   As factual support, he alleges she told him that his three 1999 misdemeanor convictions would "not cause a change in (his) sentencing in the 04 cases" because only two were person misdemeanors.   He also alleges that Kalb represented him on all three 1999 misdemeanors and "lied later on saying she did not know (he) had three person misdemeanors."   This is the first and only ground set forth in the petition.   In the space for a second ground, petitioner refers to his "Attachment" in which he makes many additional allegations to challenge his plea and sentence.   The additional claims include that petitioner had new evidence in the form of statements from witnesses in his murder case saying they lied; "the affidavit used by Det. Bill Michael" was "a perjured testimony"; petitioner told the court at sentencing that he was not guilty and his attorney was ineffective in that she visited him only once; he filed pro se motions including one for self-representation in 2005 that were not heard; his counsel and the State pressured him to waive his preliminary hearing and misled, coerced and mistreated him; when he was told to recite facts to support his guilty plea, he "said the opposite of what the State said" and the State recited false facts; and he was told by counsel and the

## APPLICATION OF 28 U.S.C. § 2244(d)

Mr. Keltner's direct criminal appeal was completed on September 27, 2007. His convictions and sentence "became final" for limitations purposes ninety days later on December 27, 2007. However, the running of the statute of limitations was immediately tolled by his already-pending first 60-1507 motion. Due to Mr. Keltner's voluntary dismissal of that motion on June 2, 2008, it was no longer pending. The federal statute of limitations first began to run in this case the next day and ran for 84 days.

On August 25, 2008, petitioner filed his second 60-1507 motion. The statute of limitations was tolled during the entire pendency of these state collateral proceedings, which concluded on September 21, 2011. The following day the federal statute of limitations recommenced with 281 days remaining.[9] It ran without interruption until it expired on June 29, 2012. The instant federal petition was executed 76 days later.

---

court to just answer "yes" and complied because he was promised a lighter sentence. He also alleges ineffective counsel based on Kalb's failures to object, which he attributes to her not knowing his case. In addition, he claims that prior convictions were used to enhance his criminal history score without being included in the complaint and proven to a jury in violation of *Apprendi*. These claims are not discussed further because petitioner did not present them in his petition along with supporting facts and did not provide the requisite information as to exhaustion of state remedies on any of them.

[9]   The court has corrected its own mathematical error of 9 days. This correction inures to petitioner's benefit.

**PETITIONER'S RESPONSE**

In petitioner's Response, he describes several sets of circumstances, which he asserts entitle him to additional tolling of the statute of limitations.   He alleges that he "first filed" a case in the KSC that was given Case No. 100603. Second, he alleges that when he hired attorney Billam to help him file his second, "new 1507" motion,[10] Billam advised that he must withdraw his first 60-1507 motion.   Third, petitioner claims that attorney Billam was "2 months late" in notifying him that the KSC denied review.   Fourth, he claims that Billam incorrectly advised him as to the start date of the federal statute of limitations in his case.   Fifth, he claims that conditions of his confinement prevented him from timely filing. Finally, petitioner argues in his Supplement that his claim of ineffective assistance of counsel is meritorious and should be heard in federal court.   Each of these alleged grounds for tolling is discussed hereinafter in turn.

**LEGAL STANDARDS**

The Tenth Circuit's "equitable tolling cases require a

---

[10]   Petitioner alleges that his family is very poor and his mother gave attorney Billam "all the money we had 4,800$."   He adds that Billam "did nothing."   However, it appears that it Mr. Billam represented him throughout his second 60-1507 proceedings.

double showing." *Bradford v. Horton*, 350 Fed.Appx. 307, 309 (10th Cir. 2009).  "First, a prisoner must show 'extraordinary circumstances beyond his control' prevented him from filing his petition on time, and, second, that he pursued his claims diligently." *Id.* (citing *Marsh v. Soares*, 223 F.3d 1217, 1220 (10th Cir. 2000)(citing *Miller v. Marr*, 141 F.3d 976, 978 (10th Cir. 1998)); *Yang v. Archuleta*, 525 F.3d 925, 928 (10th Cir. 2008)("Generally, equitable tolling requires a litigant to establish two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way.").  The Tenth Circuit has further held that, "although dismissing a prisoner's first habeas petition is a 'particularly serious matter,' we limit equitable tolling to 'rare and exceptional circumstances.'" *Bradford*, 350 Fed.Appx. at 309 (citing *Burger v. Scott*, 317 F.3d 1133, 1141 (10th Cir. 2003)); *Penn v. Kline*, 348 Fed.Appx. 344, 346-47 (10th Cir. 2009)(citing *Laurson v. Leyba*, 507 F.3d 1230, 1232 (10th Cir. 2007)).  A petitioner has the burden of establishing that he is entitled to equitable tolling.  *Miller,* 141 F.3d at 978.

Generally, there is no constitutional right to counsel beyond the first appeal of right.  See *Pennsylvania v. Finley*, 481 U.S. 551, 555-56 (1987).  Furthermore, it has specifically been held that "[t]here is no constitutional right to an attorney in state post-conviction proceedings."  *Fleming v.*

*Evans*, 481 F.3d 1249, 1255 (10th Cir. 2007)(citing *Coleman v. Thompson*, 501 U.S. 722, 752 (1991)); *Bradford*, 350 Fed.Appx. at 309 (The Tenth Circuit has "consistently recognize(d) that attorney negligence does not suffice since there is no right to counsel in post-conviction proceedings.").[11]  Courts have also reasoned "that attorney negligence is not extraordinary and clients, even if incarcerated, must 'vigilantly oversee,' and ultimately bear responsibility for, their attorneys' actions or failures."  *Fleming*, 481 F.3d at 1255-56 (citing *Modrowski v. Mote*, 322 F.3d 965, 968 (7th Cir. 2003).  The Tenth Circuit has expressly reasoned that "attorney error, miscalculation, inadequate research or other mistakes have not been found to rise to the extraordinary circumstances required for equitable tolling," and noted "for example, that mistakes by counsel in 'interpreting a statute of limitations' do not provide a basis for 'equity [to] step in.'"  *Bradford*, 350 Fed.Appx. at 309 (citing *Fleming*, 481 F.3d at 1256.); see also *Lawrence v. Florida*, 549 U.S. 327, 336-37 (2007)(attorney miscalculation of statute of limitations is not grounds for equitable tolling); *Merritt v. Blaine*, 326 F.3d 157, 169 (3rd Cir. 2003)(applying general rule that attorney mistakes "have not been found to rise

---

[11]    The U.S. Supreme Court recently recognized a narrow exception to *Coleman* where state law prohibits a defendant from raising an ineffective assistance of trial counsel claim on direct appeal.  This exception does not apply in this case because Keltner was allowed to litigate his ineffective plea counsel claim on direct appeal.

to the extraordinary circumstances required for equitable tolling"); *Rouse v. Lee*, 339 F.3d 238, 248 (4th Cir. 2003), *cert. denied*, 541 U.S. 905 (2004)("[A] mistake by a party's counsel in interpreting a statute of limitations does not present the extraordinary circumstance beyond the party's control where equity should step in to give the party the benefit of his erroneous understanding."); *United States v. Martin*, 408 F.3d 1089, 1093 (8th Cir. 2005)("Ineffective assistance of counsel, where it is due to an attorney's negligence or mistake, has not generally been considered an extraordinary circumstance [with respect to equitable tolling].").

On the other hand, in *Fleming* the Tenth Circuit held that "sufficiently egregious misconduct on the part of a habeas petitioner's counsel may justify equitable tolling of the AEDPA limitations period." *Fleming*, 481 F.3d at 1256. The circumstances in *Fleming* illustrate "egregious" attorney misconduct"

> Fleming hired counsel to represent him in state post-conviction proceedings. He subsequently made a number of inquiries as to the status of his petition and was told each time it was being prepared and would soon be filed. Aware the statute of limitations deadline was approaching, Fleming ultimately took matters into his own hands and drafted a petition with the help of a prison clerk, which he submitted to his counsel for review and filing. However, counsel did not file it until after the AEDPA deadline had passed. We concluded Fleming "ha[d] alleged enough facts to warrant, at a minimum, an evidentiary hearing to determine whether he is entitled to equitable

> tolling." *Id.* at 1256-57.   We noted Fleming was
> alleging more than "mere negligence" on the part of
> his attorney. *Id.* at 1256.   Instead, he claimed his
> attorney "deceived him into believing that he was
> actively pursuing Mr. Fleming's legal remedies when,
> in fact, he was not."

*Penn*, 348 Fed.Appx. at 347.


**<u>DISCUSSION</u>**

### A. *Additional Statutory Tolling*

Petitioner's allegations that he "first filed" Case No. 100603 in the KSC and was "later told" that he must file a 1507 in the trial court instead, are construed as an argument for additional statutory tolling.   Apparently this was Mr. Keltner's first pro se effort at challenging his sentence.   The court takes notice of state court records available on-line, specifically the Kansas Appellate Courts docket for Case No. 100603.   These records show this matter was an "original" habeas petition filed by Mr. Keltner directly in the Kansas Supreme Court docketed on June 4, 2008 and denied on July 2, 2008. Petitioner has presented no factual or legal basis for this court to find that his attempt to bypass the established state post-conviction process by seeking this very limited "extraordinary" remedy was a "properly-filed motion" that entitles him to statutory tolling.   In any event, even if the court granted additional statutory tolling for the 28 days this

motion was pending, the federal application in this case was still filed 48 days late.

**B.   *Claims of Attorney Misinformation***

   **1.   *Dismissal of First 60-1507***

The court found that the statute of limitations in this case ran during two segments: initially for 84 days in 2008 and years later for 281 days.  Petitioner makes one argument that appears to seek equitable tolling during the initial 84-day segment.  He claims that the dismissal of his first 1507 motion, which triggered the running of this segment, was on Billam's advice.  However, he does not even argue that Billam's advice was erroneous and acknowledges that he was told to first seek relief in the trial court.  Petitioner does not prove his entitlement to equitable tolling by baldly suggesting that some or all of the 84 days following his voluntary dismissal of his first 60-1507 motion should be tolled because he was following an attorney's advice.  Moreover, he does not explain how this dismissal prevented him from being able to prepare and timely file his petition during the remaining months of the one-year time limit.

   **2.   *Failure to Inform of KSC Decision***

Petitioner claims that he is entitled to equitable tolling because attorney Billam failed to immediately inform him of the KSC's decision to deny review on September 21, 2011.  In support

of this claim, he alleges that Billam was "2 months late from telling me," and exhibits letters from Billam, which petitioner characterizes as Billam "admitting he did so."   In Mr. Billam's letter to petitioner dated March 30, 2012 (Doc. 4, Exh. 1 at 2), Billam noted the Supreme Court had denied Keltner's petition for review in Case 08CV1687 and stated that he had previously informed Mr. Keltner by letter and thereafter "in January" had informed Keltner's mom.   In the letter from Billam to petitioner dated November 6, 2012 (Doc. 4 Exh. 1 at 1), Billam stated that he "first attempted" to advise Keltner of the Supreme Court's denial "about four weeks after it occurred," learned Keltner "did not receive that letter from (his) mother a few months later" when she inquired as to the case status, and "resent" the letter but Keltner did not receive that one either.   Billam concluded that "the third time was the charm."  *Id.*

Mr. Billam's failure to promptly notify his client that the KSC had denied review is disturbing.  Nonetheless, the court is not presented with facts establishing that this incident amounts to a "rare and exceptional circumstance."  *Yang*, 525 F.3d 925, 929 (10th Cir. 2008)("'Equitable tolling is a rare remedy to be applied in unusual circumstances, not a cure-all for an entirely common state of affairs.'")(quoting *Wallace v. Kato*, 549 U.S.

384, 396 (2007)).[12]   Billam at best claimed his first attempt was 4 weeks after the decision, while petitioner alleges that Billam delayed for 2 months.   Billam's other statements in his letters provide no clear picture of when or how he notified his client, but then petitioner also fails to clearly allege or show the date on which he actually received notification of the KSC's decision.   Billam's delay of up to two months might reasonably be viewed as negligent.   Unfortunately for Mr. Keltner, his state habeas counsel's negligence alone is not a basis for equitable tolling.   Petitioner alleges no facts to show that this delay should be viewed as "egregious misconduct."[13]   This case is distinguishable from *Fleming*, in that Mr. Keltner alleges nothing more than negligent conduct on Billam's part and does not suggest that Billam deceived him into believing his legal remedies were actively being pursued when they were not. This case is also distinguishable from *Fleming* in that petitioner alleges no facts showing that he made any effort to

---

[12]   Petitioner was informed that equitable tolling "would be appropriate, for example, when a prisoner is actually innocent, when an adversary's conduct—or other uncontrollable circumstance—prevents a prisoner from timely filing, or when a prisoner actively pursues judicial remedies but files a defective pleading during the statutory period." *Gibson*, 232 F.3d at 808 (internal citations omitted); *Burger v. Scott*, 317 F.3d 1133, 1141 (10th Cir. 2003).

[13]   In *Fleming*, for instance, the prisoner had numerous phone calls and in-person meetings with his lawyer confirming the status of his appeal, and counsel actively misled him to believe a habeas petition had been prepared and would be filed.   The prisoner "went so far as to prepare his own petition, which he supplied to the lawyer for review and filing."   On this record, the Tenth Circuit found grounds for an evidentiary hearing on the question of egregious attorney misconduct.

determine the status of his state collateral appeal.  *Cooley v. Medina*, 412 Fed.Appx. 51, 53 (10th Cir. 2011).  Furthermore, petitioner alleges no facts indicating that once he received the delayed notice he acted promptly to ensure that his federal application would be timely filed.  *Id.*

### 3.  Incorrect Advice as to Start Date

Petitioner claims that attorney Billam also incorrectly advised him as to the start day of the federal statute of limitations.  In support of this claim, he alleges that Billam gave him "the wrong date of the court's final denial time" and "advised" him that his "case becomes final that I have one year from his telling me."  In Billam's second letter (Doc. 4 Exh. 1 at 1) he stated that he had advised Keltner "in the past" that he had "one year from the time that (his) case becomes final, in your case the Kansas Supreme Court denies your request to hear the case, to file any further Federal motions."  Billam further stated that he had advised Keltner that his case "becomes final when this denial occurs or the time to file your request with the Kansas Supreme Court expires."  Petitioner's allegations as to his understanding of the federal limitations start date in his case are not at all clear.  Unfortunately, attorney Billam's written statements are also unclear and, to the extent they can even be understood, appear to be erroneous.

Again, attorney Billam's lack of clarity and inaccurate

advice are disturbing. However, the court cannot presume that counsel's miscalculation of the start date of the AEDPA limitations period was anything other than negligent. See *Flynn v. Kansas*, 299 Fed.Appx. 809, 813 (10th Cir. 2008). As previously noted, a petitioner's reliance on attorney "miscalculation" regarding the statute of limitations period in § 2244(d)(1) is insufficient to warrant equitable tolling, including the mistaken belief that the one-year limitation period was reset after a state collateral appeal. See e.g., *Jackson v. Kaiser*, 229 F.3d 1163 *3 n.3 (10th Cir. 2000)(equitable tolling not warranted even when attorneys clearly err by misleading their clients about AEDPA's statute of limitations); *Reynolds v. Hines*, 55 Fed.Appx. 512 (10th Cir. 2003)(habeas petitioner's attorney's incorrect advice regarding when the limitations period began to run was not the type of extraordinary circumstance entitling the petitioner to equitable tolling); *Rouse*, 339 F.3d at 248-49.[14]   From petitioner's

---

[14]   The court does not mean to suggest that attorney error can never support equitable tolling. The United States Supreme Court held in *Holland v. Florida* that "unprofessional attorney conduct may, in certain circumstances, prove 'egregious' and can be 'extraordinary.'" *Holland*, 560 U.S. at 651. However, the Supreme Court also plainly held that "the circumstances of a case must be 'extraordinary' before equitable tolling can be applied:"

> We have previously held that "a garden variety claim of excusable neglect," such as a simple "miscalculation" that leads a lawyer to miss a filing deadline, does not warrant equitable tolling. But the case before us does not involve, and we are not considering, a "garden variety claim" of attorney negligence. Rather, the facts of this case present far more serious instances of attorney misconduct . . .

allegations and exhibits, it appears to the court that the main reason Mr. Keltner delayed filing his 2254 petition until months after the federal time limit expired was his and his state collateral appeal counsel's misunderstanding of the federal law as to the start date of the statute of limitations in his case. Clearly, this particular attorney mistake amounts to a "garden variety claim" of attorney negligence and is not at all extraordinary.  Furthermore, petitioner's own ignorance of this law is not grounds for equitable tolling.  *Marsh*, 223 F.3d at 1220; *Miller*, 141 F.3d at 978; *Gibson*, 232 F.3d at 808 ("ignorance of the law generally and of the AEDPA time limit in particular will not excuse untimely filing, even for an incarcerated pro se prisoner.").  The court concludes that this mistake by counsel does not amount to a "rare and exceptional" circumstance requiring that the late filing of this § 2254 petition be equitably excused.  *Freeman*, 467 Fed.Appx. at 777.

### C.  *Conditions of Confinement*

Petitioner also claims that conditions of his confinement prevented him from timely filing his federal petition.    In support, he alleges the following.  On March 19, 2012, he was in the "hole" and on the yard at Lansing Correctional Facility

*Id*. at 651-52.  In the instant case, no facts alleged by petitioner suggest that the conduct on the part of his collateral appeal attorney "constituted far more than 'garden variety' or 'excusable neglect.'"  *Holland*, 560 U.S. at 652.

(LCF) when he was bled upon by another inmate who was injured while attempting to climb the fence.   Petitioner was refused an immediate shower, clean clothes, and testing for "Hiv and Hep C."   The next morning, he set his cell on fire.   When he refused to cuff up, a team conducted a "force cell move" during which petitioner was "shot with a chemical agent."[15]   Keltner was taken to the clinic and placed on "M.R.A. status."   When he "came back from the clinic" later that day, all his property had been taken including ten stamps purchased days before,[16] and he was not allowed to "even get mail."   He didn't receive his property with his legal work for over 2½ months.   As a result he "lost month's of not having no way to mail legal work write lawyers."

Obstructive action by prison officials that involves the "complete confiscation" of a petitioner's legal materials has been found to constitute an extraordinary circumstance warranting equitable tolling.   See *United States v. Gabaldon*, 522 F.3d 1121, 1126 (10th Cir. 2008).   At the same time, "an inmate bears a strong burden to show specific facts to support his claim of extraordinary circumstances and due diligence." *Yang*, 525 F.3d at 928.   Section 2244(d)(1)(B) makes clear that an alleged impediment must prevent a prisoner from filing his

---

[15]     Petitioner provides an exhibit of his grievance regarding these incidents.   See (Doc. 4 Exh. 2).

[16]     Petitioner alleges that in June 2012, he won a property claim on his "stuff" that "staff kept" and "lied saying (he) got it;" and in November 2012, he won another property claim "on staff taking (his) stamps."

2254 petition. *Lloyd v. Van Natta*, 296 F.3d 630, 633 (7th Cir. 2002), *cert. denied*, 537 U.S. 1121 (2003). The court finds that petitioner has not alleged specific facts showing that the confiscation of his law work on March 19, 2012 prevented his timely filing of a 2254 petition by the deadline of June 29, 2012. Mr. Keltner does not identify any particular document among his "legal work" and explain how his lack of access to that document prevented him from filing this federal petition in a timely manner. See *Parker v. Jones*, 260 Fed.Appx. 81, 85 (10th Cir.), *cert. denied*, 553 U.S. 1082 (2008)(inmate's vague allegations that he was in lockdown and had no access to legal materials will not justify equitably tolling the limitations period); *Everson v. Kansas Dept. of Corrections*, 232 Fed.Appx. 815, 817 (10th Cir. 2007)(Petitioner's failure to allege specific facts as to how lack of access to legal resources impeded his ability to timely file a claim rendered it insufficient to show entitlement to equitable tolling); *Abel v. Kansas*, 187 Fed.Appx. 867 (10th Cir. 2006); *Kerchee v. Jones*, 2011 WL 305847 (W.D.Okla.), *appeal dism'd*, 428 Fed.Appx. 851 (10th Cir. 2011)(petitioner's claim that confiscation of his legal papers and mail at the prison interfered with his ability to file timely motion was an impediment that required petitioner to show the specific steps he has taken to pursue his claims.). Since Mr. Keltner describes neither the confiscated legal

property nor the duration and impact of his lack of access, his allegations are insufficient to demonstrate that this confiscation prevented him from filing a timely 2254 petition. See *Miller v. Marr*, 141 F.3d 976, 978 (10th Cir.), *cert. denied*, 525 U.S. 891 (1998)(rejecting § 2244(d)(1)(B) claim of impediment to legal materials because of lack of specificity as to alleged lack of access.).

Mr. Keltner's allegation that he was denied mail is completely conclusory and likewise fails to prove his entitlement to equitable tolling. He provides no date suggesting how long he was "denied mail" or without access to postage. Nor does he allege that he had no alternative means of consulting with his attorney or transmitting indigent legal mail. He also fails to describe any particular legal mail that he was prevented from sending or receiving. The court additionally notes that Mr. Keltner's lockdown[17] after he admittedly set his cell on fire was not a circumstance beyond his control. In sum, petitioner has described no extraordinary condition beyond his control that actually prevented him from filing his federal habeas corpus application prior to the deadline of June 29, 2012.

**D.  *Other Claims***

---

[17]   Petitioner's allegations suggest that this more severe lockdown lasted three days.

Mr. Keltner alleges that he "fought" his case the best he could and would never let the time run if he knew the situation. However, these bald allegations are not sufficient to establish that he was diligently pursuing proper remedies throughout the 365 days that the federal statute of limitations was running in this case.   In order to show the second factor required for equitable tolling, a federal habeas petition must "allege with specificity 'the steps he took to diligently pursue his federal claims.'"   *Yang*, 525 F.3d at 930 (quoting *Miller*, 141 F.3d at 978).   Petitioner blames his late filing on the acts of others during some of the time that the limitations period was running, but does not describe a single step taken by him during this one-year period that reflects his diligent pursuit of his federal remedy.

In petitioner's "Memo in Support of 2254 motion" docketed as a Supplement (Doc. 5), he asserts that he should be allowed to proceed with this federal habeas corpus application in order to have his claims reviewed under *State v. Schow*.   In support, he alleges that the KCA affirmed the denial of his motion to withdraw plea based on *Ford*, which was later "abrogated" by *Schow*.   He then argues that he should be allowed to have *Schow* applied to his case in this federal habeas corpus proceeding because the state courts erroneously failed to apply *Schow* and he is prevented from filing successive post-conviction motions

in state court.  This argument might be a proper response to a finding of procedural default, but no such finding has been entered by this court.  Nor do any of petitioner's arguments on the merits of his claims demonstrate his "actual innocence" so as to satisfy this recognized exception to the statute of limitations. [18]

---

[18]   Even if this court wants to consider the merits of petitioner's claim of erroneous advice as to his criminal history score, it is not likely that federal habeas corpus relief is available.  The limited question on federal habeas review is whether the state court's adjudication was contrary to, or an unreasonable application of, controlling Federal law as determined by the Supreme Court of the United States.  See 28 U.S.C. § 2254(d)(1).  To satisfy the "contrary to" clause, the state court's decision must arrive at a conclusion opposite to that reached by the Supreme Court on a question of law or decide a case differently than the Supreme Court on a set of materially indistinguishable facts.  *Williams*, 529 U.S. at 412-13 (O'Connor, J., concurring).  In the absence of Supreme Court precedent on this issue, the state court adjudication cannot be contrary to established Federal law under Section 2254.  Likewise, to satisfy the "unreasonable application" clause, a federal habeas petitioner must demonstrate that the state court unreasonably applied United States Supreme Court precedent.  *Id.* at 413.  Petitioner's reliance on Kansas Supreme Court precedent does not satisfy the § 2254(d)(1) standard.  The Tenth Circuit has found:

> The Supreme Court has not squarely addressed whether miscalculated sentencing ranges compromise a plea agreement's constitutionality.  This Circuit, however, holds that "'[a]n erroneous sentence estimate by defense counsel does not render a plea involuntary. . . .  And a defendant's erroneous expectation, based on his attorney's erroneous estimate, likewise does not render a plea involuntary.'"

*Fields v. Gibson*, 277 F.3d 1203, 1214 (10th Cir. 2002)(quoting *Wellnitz v. Page*, 420 F.2d 935, 936-37 (10th Cir. 1970)).  The U.S. Supreme Court has set forth only a general legal framework for addressing whether an attorney's miscalculation invalidates a plea, and has suggested that the law affords some room for miscalculations made in good faith.  *Gardner v. McKune*, 2007 WL 852645, *5-*6 (D.Kan. Mar. 21, 2007), *appeal dismissed*, 242 Fed.Appx. 594 (10th Cir. Aug. 2, 2007), *cert. denied*, 553 U.S. 1023 (2008)(citing see *McMann v. Richardson*, 397 U.S. 759, 770 (1970)("Waiving trial entails the inherent risk that the good-faith evaluations of a reasonably competent attorney . . . will turn out to be mistaken either as to the facts or as to what a court's judgment might be on given facts.").

   In *Gardner*, the court also rejected the argument that defendant's counsel was ineffective for failing to investigate his criminal history.  The court reasoned that Mr. Gardner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the

In conclusion, the court finds that this petition was untimely filed and petitioner has "failed to demonstrate that he meets the requirements of statutory tolling or that his case presents the kind of rare and exceptional circumstance that would entitle him to equitable tolling."   See *Gunderson v. Abbott*, 172 Fed.Appx. 806, 810 (10th Cir. 2006).

## CERTIFICATE OF APPEALABILITY

Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, instructs that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."   Pursuant to 28 U.S.C. § 2253, the court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right," and the court "indicates which specific issue or issues satisfy [that] showing."   A petitioner can satisfy that standard by demonstrating that the issues raised are debatable among

proceeding would have been different," (*Strickland*, 466 U.S. at 694); and that, in the context of a guilty plea, this required Gardner to "show that he would not have pled guilty had his attorney performed in a constitutionally adequate manner." *Miller v. Champion*, 262 F.3d 1066, 1068 (10th Cir. 2001). Mr. Keltner neglects to mention that he was originally charged with first-degree murder, and this charge was amended to voluntary manslaughter in the plea agreement.  See *State v. Keltner* at *1.

Furthermore, this court is bound by a state court's interpretation of its own law.  See *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991)("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. *Gardner*, 242 Fed.Appx. at 597-98.

jurists, that a court could resolve the issues differently, or that the questions deserve further proceedings. *Slack v. McDaniel*, 529 U.S. 473 (2000)(citing *Barefoot v. Estelle*, 463 U.S. 880, 893 (1983)).  In addition, when the court's ruling is based on procedural grounds, a petitioner must demonstrate that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.  The court concludes that a certificate of appealability should not issue in this case.  Nothing suggests that the court's rulings resulting in the dismissal of this action as time barred are debatable or incorrect.

**IT IS THEREFORE BY THE COURT ORDERED** that this petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 is denied as time barred.

**IT IS FURTHER ORDERED** that a certificate of appealability is denied.

**IT IS SO ORDERED**.

Dated this 25th day of November, 2014, at Topeka, Kansas.


**s/Sam A. Crow**
**U. S. Senior District Judge**